UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

4 NYP VENTURES LLC,

                *Plaintiff*,

    -against-

FACTORY MUTUAL INSURANCE
COMPANY,

                *Defendant*.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-12-16

**14 Civ. 8602 (PAC)**

[Also relates to 13 Civ. 3367]

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    In May 2012, Defendant Factory Mutual Insurance Company ("FM") sold Plaintiff 4 NYP Ventures LLC ("4 NYP") a $500 million all-risk insurance policy in conjunction with 4 NYP's acquisition of an office building at 4 New York Plaza in lower Manhattan. Since the property was in a flood-prone location, the parties agreed to a $20 million limit on losses related to "Flood" damage, with an expansive definition of what constitutes a "Flood."

    On October 29, 2012, Hurricane Sandy struck New York City, causing substantial damage to the property and, according to 4 NYP, well over $100 million in losses. Soon after, 4 NYP submitted claims totaling $20 million for "Flood" losses, which FM paid. Subsequently, 4 NYP claimed that the policy "includes a specific grant of coverage for the peril of 'Named Storm,'" and that 4 NYP can collect on that peril up to $500 million. Dkt. 68 at 4. 4 NYP sued after FM refused to make further payments. FM now moves for summary judgment on grounds that the $20 million "Flood" limit is applicable, and that FM has satisfied its policy obligations by paying 4 NYP $20 million for its losses.

1

The Court holds that the insurance policy does not provide for distinct "Named Storm" coverage. "Flood" damage caused 4 NYP's losses, and FM paid 4 NYP all that 4 NYP is entitled to under the policy. The Court GRANTS FM's motion for summary judgment.

## BACKGROUND

A detailed account of the facts is provided in the Court's prior decision of February 25, 2016. *Aspen Specialty Ins. Co. v. 4 NYP Ventures LLC*, 2016 WL 759633 (S.D.N.Y.). The Court summarizes only those facts relevant to the present motion.

On May 22, 2012, 4 NYP acquired 4 New York Plaza. *Id.* at *1. 4 NYP hired CBRE Group, Inc. to manage the property and Edge Financial Advisors to procure property insurance. *Id.* Prior to the sale, Edge initiated procedures to add the property as an insured location under CBRE's preexisting master insurance policy with FM (the "FM Policy"), which covered hundreds of CBRE-managed properties. *Id.* On May 17, 2012, Edge received a certificate of insurance, confirming that FM added the property to the FM Policy. *Id.* On August 17, 2012, FM issued General Change Endorsement No. 4 ("GCE 4") to the FM Policy, retroactive to May 22, 2012, which added 4 New York Plaza to the FM Policy's Schedule of Locations. *Id.* at *3.

The FM Policy has several relevant provisions. First, the FM Policy's "Limits of Liability" section provides that the maximum limit of liability for a single occurrence is $500 million. Ex. 11 at 3.[1] The section then lists sixteen sublimits for specific categories of losses. One category is a $200 million limit for "Flood in the Aggregate During Any Policy Year." *Id.* at 5. GCE 4 explicitly modifies that provision, setting a $20 million limit for "Flood" losses at

---

[1] All cited exhibits are in the Declaration of Harvey Kurzweil, Docket 61.

2

4 New York Plaza.[2] Ex. 10 at 7. Another category is a $200 million limit for "Named Storm in Tier I Wind Counties," although the FM Policy specifies that New York is a Tier III Wind County. Dkt. 11 at 3, 14. Finally, the section provides that when any sublimit applies, that amount is the "maximum amount payable for all loss or damage." *Id.* at 3.

Next, the FM Policy contains a "Deductibles" section, which the Court discussed in detail in its prior decision. *See* 2016 WL 759633, at *1-2, 4. The section sets a baseline deductible of $10,000, but sets higher deductibles in the event of, among other things, "Flood" and "Named Storm" losses. Ex. 11 at 11. The section defines "Named Storm" as:

> Wind and/or Flood, when such Wind and/or Flood is associated with or occurs in conjunction with a storm or weather disturbance which is identified by name by any meteorological authority, such as the U.S. National Weather Service or National Hurricane Center, whether or not such storm or weather disturbance is named prior to loss or damage.

*Id.* at 13.

Finally, the FM Policy lists 31 categories of "Additional Coverages." *Id.* at 18-37. "Flood" is one such category; Named Storm is not included. *Id.* at 28. The "Flood" section states: "This Policy covers physical loss or damage caused by or resulting from Flood." *Id.* It defines "Flood" extremely broadly as, among other things, physical loss or damage caused by "surface waters," "rising waters," "storm surge," or "sea surge," as well as "[p]hysical loss or damage from Flood associated with a storm or weather disturbance whether or not identified by name by the U.S. National Hurricane Center or any other meteorological authority." *Id.* at 28.

On November 28, 2012, a month after the Hurricane struck, 4 NYP submitted a claim for $7.5 million with an attached Proof of Loss stating that "Flood" was the "cause and origin of the

---

[2] In its prior decision, the Court rejected 4 NYP's argument that GCE 4 is invalid or unenforceable. 2016 WL 759633, at *4-6.

said loss." Ex. 18 at 4. On December 4, 2012, FM paid 4 NYP $7.5 million. Ex. 19 ¶ 5. On January 25, 2013, 4 NYP submitted a second claim for $12.5 million with a Proof of Loss that again attributed the claim to "Flood" loss. Ex. 20 at 7. On February 6, 2013, FM paid 4 NYP $12.5 million. Ex. 19 ¶ 6. On July 25, 2013, 4 NYP submitted a third claim for $50,951,687.88 with a Proof of Loss that attributed the claim to "Named Storm" loss. Ex. 22 at 5. On August 30, 2013, FM responded that the $20 million it already paid constituted the maximum amount owed to 4 NYP under the FM Policy, and so refused to cover the third claim.[3] Ex. 23. On October 28, 2014, NYP sued FM for declaratory relief and breach of contract. FM now moves for summary judgment.

## DISCUSSION

### I. Legal Standards

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "resolve[s] all ambiguities and draw[s] all reasonable inferences in the light most favorable to the nonmoving party." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013). The Court grants summary judgment only where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015).

"Generally, the courts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on specific language of the policies." *State of N.Y. v. Home Indem. Co.*, 66 N.Y.2d 669, 671 (1985). "[T]he unambiguous provisions of an insurance policy, as with any written contract, must be afforded their plain and ordinary meaning, and []

---

[3] 4 NYP has recovered an additional $59.5 million from several excess insurers. 2016 WL 759633, at *3.

4

the interpretation of such provisions is a question of law for the court." *Broad St., LLC v. Gulf Ins. Co.*, 37 A.D.3d 126, 130-31 (N.Y. App. Div. 1st Dep't 2006).

**II.     Analysis**

The FM Policy is clear and unambiguous. It provides an expansive definition of what constitutes "Flood" damage, and all agree that the losses caused by Hurricane Sandy fall within that definition. Any doubts are removed by 4 NYP's first and second claims, which list "Flood" as the cause of loss. Ex. 18, 20. Since the losses were caused by "Flood" damage, the $20 million "Flood" sublimit, incorporated into the FM Policy via GCE 4, applies and is the "maximum amount payable for all loss or damage." Ex. 11 at 5; Ex. 10 at 7. And since FM has already paid 4 NYP $20 million, it has no further liability to 4 NYP regarding Hurricane Sandy losses.

Nonetheless, 4 NYP argues (i) Hurricane Sandy is a "Named Storm" as defined in the FM Policy; (ii) the FM Policy "includes a specific grant of coverage for the peril of 'Named Storm'"; and (iii) losses from a "Named Storm" are covered up to the full policy limit of $500 million and without regard to the $20 million "Flood" sublimit. Dkt. 68 at 4, 11-12.

As to the first point, the Court agrees that Hurricane Sandy is a "Named Storm" because the storm was identified by name by the National Weather Service.[4] But 4 NYP's interpretation of the FM Policy as to the second and third points is pure fantasy: it requires ignoring language that is in the FM Policy and adding language that is not.

As to the second point, nothing in the FM Policy says that "Named Storm" is a distinct peril entitled to independent coverage. Beyond the definition, the term "Named Storm" appears

---

[4] "Hurricane Sandy – October 29, 2012," National Weather Service, http://www.weather.gov/okx/HurricaneSandy ("Hurricane Sandy was the 18th named tropical cyclone of the 2012 Atlantic hurricane season").

seven times in the FM Policy. Ex. 11 at 3, 8, 11, 12. Six instances are in the "Deductibles" section—perhaps explaining why the definition is also in that section—and set forth higher than normal deductibles for damages caused by a "Named Storm." *Id.* at 8, 11-13. Those provisions are irrelevant because the applicable deductible is not in dispute—and was already resolved in the Court's prior decision. 2016 WL 759633, at *4. The seventh instance is in the "Limits of Liability" section, setting forth a $200 million sublimit for "Named Storm in Tier I Wind Counties." *Id.* at 3. That provision is also irrelevant because the property is not in a Tier I Wind County. *Id.* at 14. So nothing in the FM Policy explicitly provides for distinct coverage for losses incurred due to a "Named Storm."

Further, it is telling that "Named Storm" is not included in the "Additional Coverages" section. That section sets forth a full range of possible causes of damages that might occur at the property which the FM Policy covers. In addition to "Flood," it includes "Brand and Labels," "Data, Programs or Software," "Debris Removal," "Earth Movement," "Fine Arts," "Terrorism," and dozens more. *Id.* at 18-38. That "Named Storm" does not appear on that list belies any inference that the FM Policy implicitly covers "Named Storm" as a distinct peril.

Finally, there is the definition itself. The FM Policy defines "Named Storm" as "Wind and/or Flood" damage, when that damage is related to a storm named by a meteorological authority. *Id.* at 13. Since 4 NYP has never claimed any "Wind" damages, its claim for "Named Storm" damages by definition collapses into simply a claim for "Flood" damages. There is no independent "Named Storm" coverage.

As to the third point, even if the FM Policy permits "Named Storm" coverage, it would not follow that the limit on that coverage would be $500 million. As described above, the losses fall under the $20 million "Flood" sublimit. Under explicit terms of the FM Policy, that is the

*maximum* amount that FM is liable for all losses or damages. *Id.* at 3. So even if 4 NYP could classify the losses as "Named Storm" in addition to "Flood," the most it could collect would still be $20 million. FM has paid $20 million, and so has no further obligations to 4 NYP regarding Hurricane Sandy losses and damages.

## CONCLUSION

The Court GRANTS FM's motion for summary judgment. Dkt. 58 (14 cv 8602). FM has fully satisfied its obligations under the FM Policy by paying $20 million to 4 NYP for its Hurricane Sandy losses. The Court also DENIES as moot 4 NYP's motion for a jury trial. Dkt. 72 (14 cv 8602); Dkt. 143 (13 cv 3367). The parties in the 13 cv 3367 case are directed to appear on Tuesday, July 26 at 3:45 pm in Courtroom 14C to discuss the trial schedule.

The Clerk is directed to enter judgment for Factory Mutual Insurance Company and close 14 cv 8602. The Clerk is directed to terminate all open motions in 13 cv 3367.

Dated: New York, New York
       July 12, 2016

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge